Our third case for argument this morning is Arce v. Chicago Transit Authority. Good morning. May it please the Court. Mr. Smith. Thank you, Your Honor. May it please the Court. Basically, there's two issues involved in this case. One is, there was a motion to dismiss some counts that were brought forth to the Court, and then the summary judgment. Basically, there was a first amendment, there was a first complaint filed back in 2014, which had gone with racial discrimination and constructive discharge. The CTA then had filed a motion to dismiss. The plaintiff then filed an amended complaint. Then the CTA followed up with another motion to dismiss the first amended complaint. On August 14th, the plaintiff moved to amend the complaint, which was granted. From that point on, there was a count 1, the 1981 race discrimination, national origin. Count 2 was a race discrimination. Count 3 was a national origin discrimination, hostile work environment. Count 4, the American Disability Act. Count 5, retaliation based on the American Disability Act. Count 6, constructive discharge. Count 7, 1981 retaliation. Count 8, which the Court then considered A, was a constructive discharge. Count A, B. I don't know that a recitation of counts in the complaint is helpful. You have only eight minutes left. You might want to get to your argument. Yes, but of that, the count 1, 1981, was dismissed by the Court. Count 2, the race discrimination was dismissed by the Court. Count 9 and 10 were also dismissed. Basically, within the court, if they found deficiencies, she felt they could be cured. The Court then disallowed the continuation of an amendment to the complaint by really... Mr. Smith, one of my concerns, ordinarily we try to be pretty liberal about amending complaints, but I don't see where you told either the district court or this court what the court found. Well, I think that, Your Honor, it was brought out to some extent that the attorney started advising the court about the 300-day or continuing violation actions that she felt might have been able to be well-pled, along with filing of a ERISA action, which she felt would be important. The court reviewed that and basically felt that the 300-day would not work for that person, and also disregarded the potential ERISA violation. So it would go that if this attorney believed that there were some weaknesses in the complaint that could be brought out, at least there should have been an opportunity. There was really only one amended complaint by court ruling. So basically, the next motion to dismiss brought out a lot of weaknesses within that complaint. It seems logical that having viewed the motion to dismiss, there certainly could be some things that a trial attorney might view as additional facts that could be pled, which then... I didn't see, Mr. Smith, any real response to the district court's reasoning with respect to the hostile environment claim. I think on this record, we have to assume that offensive hostile things happened to Mr. Arce at some point in the past, at many points in the past, when he was working for the CTA. But at the time this suit was filed and an EEO complaint was filed, he had not been in that work environment for several years, had he? Because he'd been on disability leave. Well, he had been on disability, but a lot of the things showed a mindset by Cardoff and Murphy about their disinterest in him based on his continuing being injured. I mean, there was even a bet by one of the supervisors that he wouldn't make it to Christmas. I mean, there's a mindset sometimes, Judge, that... And that goes back several years, correct? Yes, that's correct. So within the 300 days, was Mr. Arce in the environment that he has alleged had been hostile to him in the past? Because he'd been out of it based on disability debt. That's the whole issue is... The answer is no, I take it. No. Okay, thank you. I also didn't see you really address the district judge's rationale for the ADA claim, that driving is an essential function of a service truck chauffeur. I understand, and I was certainly going to cover that with the summary judgment. I believe at this point in time, as this court has ruled, that if somebody cannot perform the essential functions of their job, they certainly should be given a vacant position through the interactive process. And what we're saying is the interactive process was never really situated that... Did you offer evidence of a vacant position for which Mr. Arce was qualified? No, he didn't really have the interactive process to do that. He only had some emails and maybe a 30-minute conversation with Ms. Cobb with the employment issue. We've said time and again that the interactive process contemplated, that a breakdown in the interactive process contemplated by the Americans with Disabilities Act is not itself a violation. It's the failure to accommodate that is the violation. And to prove a failure to accommodate by a failure to transfer somebody to a vacant position, the plaintiff has to be held accountable. But maybe I overlooked it. Well, again, Your Honor, they didn't have the process where he was able to sit down with the employment section and come up with potentially those kind of issues that he could identify were open. I mean, he did give them a request for an accommodation, which was very broad, on what he was able to do. But going to the essential function again, I believe that the essential function, the only thing that was being argued by the CTA was because he was on a narcotic drug. But basically there's an exemption to that, that if he has a narcotic or he has a drug and it's prescribed by a doctor and a doctor has not given him a notice that he can't drive, it seems to be the exception that was not brought out in this case, that he was not told he could drive. It was just an idea that he was... Is that in the briefs? Excuse me? Is that exception in the briefs? Yes. Okay. Hmm. Counsel, you might want to continue your argument. Your time is running. Oh, I'm sorry. So I believe that the issue of the essential function was really a determination and an assumption by the CTA that based on that drug that they found out about that he couldn't drive, but there was nothing in his restriction that said that he couldn't drive based on the pharmaceuticals that he was prescribed. I'd like to reserve the little time I have left. Certainly, Mr. Smith. Ms. Kaplan. Thank you, Your Honors. May it please the Court, my name is Rachel Kaplan and I represent the CTA. The CTA was properly granted summary judgment here for two primary reasons. First, Arce was not a qualified individual with a disability under the ADA, and second, he does not assert a prima facie case of discrimination under Title VII. As for Arce's ADA claim, he was not a qualified individual with a disability because he could not perform the essential function of a truck driver who could not drive a truck. There's two main reasons he could not comport with those essential functions. First, he was using narcotics as prescribed by his doctor, but under both state and federal regulations, truck drivers are prohibited from using narcotics. And in response to the Justice's question, there is an exception for someone to be able to his doctor certifies that even if the individual is using narcotics, he can safely drive a commercial vehicle. That did not occur in this case, nor did Arce ever assert that it occurred in this case. The other reason why Arce was not a qualified individual with a disability is because even though he was on temporary medical disability leave for three years, which was the maximum amount of time allowed under the collective bargaining agreement, his doctor never approved him to return to work at any point in time. While Arce repeatedly admitted this during his deposition, he unsuccessfully tried to change his testimony about that after the fact, but the district court properly disallowed that. But even if Arce were a qualified individual with a disability, which he was not, it was his burden, as this court itself noted, to identify a vacant and permanent position that he could perform, and he did not do that. Relative to Arce's Title VII claims, those claims are also unsuccessful because, as this court noted, all of them were time barred. All the conduct of which Arce complains violated Title VII occurred prior to February 2012, so it was time barred. For these reasons, and for those reasons articulated in the brief, the CTA asks that this court affirm the district court's judgment awarding its summary judgment. Thank you. Thank you, Ms. Kaplan. Anything further, Mr. Smith? Yes. In dealing again with the issue of the narcotic drug, which is indicated by counsel, was a disqualifying feature for the plaintiff. In this particular case, he did have a right to go back to work with the light duty. It was also pointed out within their own request to admit that he was able to drive a motorized vehicle from 2010 to 2015. He operated a motorcycle. He operated a three-wheel, all-terrain vehicle, which certainly has to be looked at as a bumpy ride that certainly is going to aggravate his injury if it's that serious. So, I mean, at this point in time, it seems like the exception is not really been set aside by the counsel. I believe that at this point in time that there's no showing that he couldn't drive a truck for the CTA while on narcotic. Did he have a CDL license? I believe he did have a CDL. That allowed him to drive with narcotics? Under the exception, Judge, I believe he could. Did you show the exception applied? Did the CTA see the exception? Did Mr. Arce show that he was entitled to drive commercial vehicles despite being on narcotic pain medication and despite the regulations that generally say you can't do that? I can only use the reverse of that, Judge, that there's nothing showing by his doctor that he couldn't drive the vehicle. Okay. Thank you. Thank you, Mr. Smith. The case is taken under advisement.